124 Pa. Commonwealth Ct. 103 (1989)
555 A.2d 256
Board of Supervisors of Upper Southampton Township
v.
The Zoning Hearing Board of Upper Southampton Township. Schiller-Pfeiffer Machine Works Division, Belmont Industries, Appellant.
No. 548 C.D. 1988.
Commonwealth Court of Pennsylvania.
Argued December 12, 1988.
March 9, 1989.
Argued December 12, 1988, before Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.
*104 Frank W. Jenkins, with him, Stephen P. Imms, Jr., for appellant.
Daniel J. Lawler, with him, John J. Gonzales, Lawler & Gonzales, for appellee.
OPINION BY JUDGE CRAIG, March 9, 1989:
Schiller-Pfeiffer Machine Works (applicant) appeals from an order of the Court of Common Pleas of Bucks County that reversed a decision of the Upper Southampton Township Zoning Hearing Board granting variances to the applicant to construct an addition to its manufacturing plant.
The first issue raised by the applicant is whether the court correctly decided that there was no substantial evidence to support the board's finding that the property could not possibly be developed in strict conformity with the zoning ordinance, where the record basis for that finding was the description of the property and the surrounding properties, coupled with the opinion testimony of the project manager of the company to be hired to build the extension.
The property in question is 176.2 feet wide and 1,450 feet deep. To a depth of 450 feet, the property is located in a commercial district designated C-C under the Southampton Zoning Ordinance; the remaining 1000 feet is in an R-2 residential district. Two commercial buildings abut the front of the property, and the entire rear portion is surrounded by residential development. The only access to the rear portion of the property is a driveway *105 approximately thirty feet wide on the southeast side of the building.
The applicant has operated a machine shop and plant for the manufacture and assembly of garden tools in this building since before 1954, when Upper Southampton first enacted its zoning ordinance. The building, as well as the lot, spans both of the described zoning districts. Hence the business has been a nonconforming use in both districts since the enactment of the ordinance.[1]
By application dated April 7, 1986, the applicant sought a construction permit to build an addition of 24,160 square feet to its existing plant (taken to 50,830 square feet by previous construction and expansion), which would result in a building with a total area of 74,990 square feet. The zoning officer of the township denied the permit, citing the use districts involved and the plan's violation of two other provisions of the zoning ordinance: Section 803(3), which permits expansion of nonconforming uses, but limits that expansion to 50% of the area occupied by the use at the time of the original enactment of the zoning ordinance, see n.1, below, and Section 502, which limits the percentage of impervious surface on a lot. The applicant then applied to the board for variances.
*106 At the zoning hearing board hearing, the applicant offered the testimony of Mark Pfeiffer, one of its principals, as to the nature and history of the business, its current state, and the asserted need for additional warehouse space. William F. Fishburn, an employee of the company hired to develop the plan for the addition, testified concerning the specifics of the plan, which includes proposed construction of additional parking area, a water retention basin to limit run-off to present levels or below, and some landscaping as well as the addition to the building. Mr. Fishburn also testified as to his negative opinion of the feasibility of developing the land behind the building for permitted uses. Although no one entered a formal appearance as a party in opposition to the application, some fourteen neighbors of the applicant testified in opposition.
On August 20, 1986, the board issued a decision and order granting the variances subject to nine conditions. The board's crucial findings were that the requested expansion for warehouse and shipping and receiving space was necessary to accommodate growth involving modernization essential to the continued viability of the business (Finding of Fact No. 14); that since 1981 the business had experienced an increase in the volume of sales and had added new product lines and that the additional space was a matter of necessity for the business rather than merely taking advantage of an increase in business (F.F. No. 15); that the property has unique physical characteristics because of the narrowness and depth of the lot and the fact that access to the rear of the property is limited to a driveway alongside the existing building (F.F. No. 16); that "[b]ecause of the physical circumstances and conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance" (F.F. No. 17); and *107 that the conditions of the property were not created by the applicant, but existed before the zoning ordinance, and that an expansion of the subject property would not alter the essential character of the neighborhood, impair the development of adjacent property or be detrimental to the public welfare (F.F. No. 18).
The Board of Supervisors of Upper Southampton Township appealed to the court of common pleas. The court heard the case on briefs and oral argument and did not take additional evidence.
In its opinion reversing the decision of the board, the court first cited appropriate authority to outline the issues before it. Because the court received no additional evidence, the scope of its review was to determine if the board committed a manifest abuse of discretion or an error of law. City of Philadelphia v. Angelone, 3 Pa. Commonwealth Ct. 119, 280 A.2d 672 (1971). A zoning hearing board abuses its discretion when its findings are not supported by substantial evidence. Appeal of Bilotta, 440 Pa. 105, 270 A.2d 619 (1970). One seeking a variance must establish to the satisfaction of the board (1) that the ordinance imposes an unnecessary hardship on the particular property; (2) that the hardship results from unique physical characteristics of the property; (3) that granting the variance would not have an adverse impact on the health, safety and welfare of the general public; (4) that the hardship is not self-inflicted; and (5) that the variance is the minimum that will afford relief. Bellosi v. Zoning Hearing Board of Clifton Heights Borough, 96 Pa. Commonwealth Ct. 83, 506 A.2d 997 (1986); section 912 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §10912.
The court then focused on the board's Finding of Fact No. 17, quoted above, concerning the absence of any possibility that the property could be developed in strict *108 conformity with the zoning ordinance because of the physical circumstances and conditions. The court examined the record basis for this finding and concluded that such basis existed solely in the testimony of Mr. Fishburn, the project manager of the proposed builder. Concerning the weight to be given the testimony of Mr. Fishburn, the court said:
To begin with the project manager was never identified as an expert in any particular capacity and the record is unclear with respect to his background and experience. There is nothing in the record indicating what his expertise might be in residential, commercial or other real estate development, in real estate sales or land use. It is difficult therefore for the Court to evaluate the accuracy or significance of any opinion he may make with respect to land use. (Emphasis added.)
The court next considered the content of Mr. Fishburn's testimony on this topic, quoting substantially all of it. The witness expressed himself in terms of feasibility of developing the rear portion of the property. The court concluded that such testimony did not rise to the level of evidence of impossibility of developing the property in conformity with the ordinance and hence could not form a basis for the board's finding of impossibility.
Where the court of common pleas has received no additional evidence in considering an appeal from a decision of a zoning hearing board, the scope of review of this court also is limited to determining whether the board committed an abuse of discretion or error of law. Upper Moreland Township Board of Commissioners v. Upper Moreland Township Zoning Hearing Board, 22 Pa. Commonwealth Ct. 361, 349 A.2d 507 (1975).
The applicant first argues that the trial court committed error by engaging in an independent evaluation of the *109 competence of the applicant's witness, citing Harman Coal Co. v. Department of Environmental Resources, 34 Pa. Commonwealth Ct. 610, 384 A.2d 289 (1978), for the proposition that the competence of a witness to testify in terms of qualifications is a matter within the discretion of the trier of fact, and his or her decision will not be disturbed except in a case of clear error.
In this case, the trial court's complaint that the lack of any qualification of Mr. Fishburn as an expert or any identification of his field of expertise made it impossible "for the Court to evaluate the accuracy or significance of any opinion he [might] make with respect to land use" (emphasis added) clearly reveals that the trial court adopted the role of factfinder.
Further, the trial court concluded that the board relied on Mr. Fishburn's opinion as the basis for its finding as to the ultimate fact of lack of possibility of development in conformity with the ordinance. However, a comparison of Mr. Fishburn's testimony with the rest of the record and the findings of the board reveals that his testimony added nothing to the description of the property and its surroundings already in the record. The record, principally the applicant's Exhibit A-1 (the plan for the proposed construction), discloses that the property is long and narrow, spanning two zoning districts (in both of which the use is nonconforming), that the property is surrounded in the rear portion by residential homes, and abutted in the front by commercial properties, and that the only access to the rear portion of the property is by means of the driveway that runs along one side of the existing plant.
The fact that the board arrived at the same view as Mr. Fishburn does not mean that the board relied on his opinion as the basis for its conclusion. Mr. Fishburn's opinion testimony as to the lack of feasibility of developing *110 this land in conformity may or may not have contributed to the board's finding of impossibility. Nevertheless, the issue before the court of common pleas and before this court on review is simply whether the board had before it evidence that a reasonable mind might accept as adequate to support the factual conclusion that the board reached.
In Valley View Civic Association v. Zoning Board of Adjustment, 501 Pa. 550, 462 A.2d 637 (1983), the Supreme Court considered a case involving an application for variances to use the first floor of a three-story house as a take-out steak and sandwich shop. Although zoned single-family residential, the area around the building was occupied by numerous commercial establishments, including a twenty-four-hour convenience store, a gas station, a bank and a retail tire store. The evidence before the board on the issue of hardship to the property consisted of the brief testimony of the applicant's architect, photographs and a drawing of the site and its surroundings, the report of the board's inspector listing other nearby uses and the information gained from the board's own visual inspection of the area. The board granted the variances and the court of common pleas affirmed on appeal.
This court reversed the court of common pleas, expressing the view that the evidence of surrounding disharmonious uses, although relevant, was not conclusive on the issue of hardship absent a showing that the property was rendered practically valueless as zoned, and noting the lack of evidence that the property could not physically be used for residential purposes or that it had no value or only a distress value for residential use.
The Supreme Court reversed our reversal, noting that the Court had never held that an owner seeking a variance had to present direct evidence as to the value of *111 the property as zoned. The Court stated that the board's function was to determine whether the applicant had made the showing (1) that an unnecessary hardship would be worked upon the land if the variance were denied and (2) that the grant of the variance would not be contrary to the public interest, and that the courts would not disturb the board's determination that an applicant had made such a showing if it were supported by such relevant evidence as a reasonable mind might accept as adequate to support the board's conclusion.
As for the adequacy of the evidence of hardship in that case, the court said:
We are satisfied that the Board could reasonably have inferred from the evidence before it that the extensive commercial and industrial uses in the immediate vicinity rendered Ms. Horen's property virtually unusable and of scant value for traditional residential purposes. That evidence paints a picture of a property flanked by a large convenience store and a gas station on a heavily travelled roadway, surrounded by a patchwork of commercial and industrial businesses, vacant lots and intermittent dwellings. It would not be unreasonable to infer that a property so situated would be undesirable and hence unmarketable for residential use. Thus there was substantial evidence to support the Board's findings and we need look no further.
Valley View Civic Association, 501 Pa. at 559, 462 A.2d at 642.
The situation in the present case is nearly identical. Without regard to the testimony of Mr. Fishburn, the board had before it sufficient evidence concerning the particular characteristics of this property and the nature of the surrounding properties so that the board could reasonably infer that the property would be unmarketable *112 for residential use. Hence the board's finding on this point was supported by substantial evidence, and the court of common pleas erred by concluding otherwise.
Because we have concluded that the board's decision was supported by substantial evidence, we need not address the applicant's argument relating to the second part of the trial court's decision. There the trial court considered and rejected the applicant's alternative argument to the effect that the board had the power to grant the variances based on an asserted right to reasonable expansion of a nonconforming use to meet the dictates of business, even if the applicant had failed to show unnecessary hardship arising out of unique physical characteristics. We note in passing, however, that the applicant appears to be correct in its claim that the trial court "misperceived" its argument on this point by ruling that the applicant had "already had its day in Court" on this issue in the litigation that culminated with this court's 1971 decision. In the earlier litigation, the applicant challenged the validity of the ordinance provision that limited the expansion as a matter of right of a nonconforming use. Here, the applicant accepted the validity of the ordinance, but put forth an argument intended to justify the grant of a variance from the terms of the ordinance.
The order of the court of common pleas is reversed.

ORDER
NOW, March 9, 1989, the order of the Court of Common Pleas of Bucks County at No. 86-07052-14-5, dated February 16, 1988, is reversed.
NOTES
[1] In 1970 the applicant applied to enlarge the building by 8,150 square feet. After the zoning hearing board denied the application on the basis of a 1962 amendment to the zoning ordinance that stated that nonconforming uses could expand, but not beyond 50% of the area they occupied in 1954 (when the zoning ordinance was originally enacted) and the court of common pleas affirmed, the applicant appealed to this court. This court upheld the 1962 amendment against the applicant's constitutional challenge and ruled that the building could expand by only 3,950 square feet beyond its size at the time of that litigation, to a total of 54,780 square feet (a 50% increase over its size in 1954). Schiller-Pfeiffer, Inc. v. Upper Southampton Township Board of Adjustment, 1 Pa. Commonwealth Ct. 588, 276 A.2d 334 (1971).