571 A.2d 533

**Fred COLELLI**

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH.**

**Appeal of CITY OF PITTSBURGH.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 8, 1990.

Decided March 6, 1990.

Timothy C. Burke, Asst. City Sol., with him, D.R. Pellegrini, City Sol., for appellant.

Stephen A. Zappala, Jr., for appellee.

Before CRAIG and SMITH, JJ., and NARICK, Senior Judge.

CRAIG, Judge.

The City of Pittsburgh appeals a decision of the Court of Common Pleas of Allegheny County that reversed a deci-

sion of the city's Zoning Board of Adjustment and remanded the case to the board to grant a permit to Fred Colelli allowing him to continue the operation of a pasta-and-sausage-making business in his home. We reverse the trial court's decision.

The facts, as indicated in testimony and the board's decision, are as follows. Fred Colelli's father acquired the business in 1953 when he purchased a home on Dunster Street in 1953. The dwelling is a two-story building, and is located in an R–1 district. Colelli obtained the required health inspection permits, first from the city in 1953, when he acquired the business, and again in 1957 from Allegheny County, which then had taken over the city's former health regulation functions. However, Colelli never applied for an occupancy permit under the city zoning ordinance.

In 1986, city zoning authorities informed Colelli that he did not have the required occupancy permit to operate his business. Colelli applied for a special exception under section 909.06(b)(8) of the ordinance, which allows "home occupation[s]" in R–1 districts, and apparently also claimed that he has a vested right to continue his business, or that laches precludes the city from seeking enforcement of its ordinance.

The board concluded that Colelli's business did not qualify as a "home occupation", and denied his request, countering his additional laches and vested rights theories by indicating that the knowledge of the county health inspectors (and formerly the city health inspectors) as to his operation could not be imputed to city zoning authorities.

The trial court disagreed with the board and reversed. On appeal to this court, neither party disputes the board's conclusion that Colelli's business does not qualify as a "home occupation" under the special exception provision. The city argues that the board properly concluded that Colelli had not established a vested right to continue his business or entitlement to a variance by estoppel, and that the equitable doctrine of laches should not apply to the city in this case.

Our scope of review in appeals from zoning hearing boards, where the trial court takes no additional evidence is limited to a determination of whether the board abused its discretion or erred as a matter of law. *Board of Supervisors of Upper Southampton Township v. Zoning Hearing Board of Upper Southampton Township*, 124 Pa. Commonwealth Ct. 103, 555 A.2d 256 (1989).

One of the theories upon which Colelli relies as support for the trial court's decision generally applies only where a municipality has issued a permit in error, and the recipient or opponent claims that the recipient should or should no longer be able to benefit from the erroneously issued permit.

■ Another possible theory, upon which the trial court based its decision, referred to as variance by estoppel, applies when a property owner, or someone with an interest in property, has maintained a use of property contrary to the zoning laws for a long period of time. As the term suggests, the theory provides protection for uses that are contrary to the zoning law, but in which the municipality has acquiesced. Similar to the estoppel theory is Colelli's argument that the equitable doctrine of laches precludes the city from seeking to enforce its zoning ordinance. Because the city never issued a zoning permit to Colelli, the present case clearly falls within the estoppel or laches category.

■ The estoppel cases have developed a five-factor standard under which an applicant must establish: (1) the municipality's failure to enforce the ordinance for a long period of time; (2) that the municipality knew, or should have known, of the illegal use and "actively acquiesced" in the illegal use; (3) reliance by the owner on the appearance of regularity that the municipality's inaction has created; (4) hardship created by cessation of the illegal use; and (5) that the variance will not be a threat to the health, safety or morals of the community. *Lockwood v. Zoning Hearing Board of Millcreek Township*, 115 Pa.Commonwealth Ct.

368, 540 A.2d 336 (1988). *See also, Ryan, Pennsylvania Zoning Law and Practice,* § 8.3.4.

■ We agree with the city that Colelli has not established that the city "actively acquiesced" in the use contrary to the zoning ordinance.

In *Klanke v. Zoning Board of Adjustment,* 83 Pa.Commonwealth Ct. 441, 477 A.2d 907 (1984), this court concluded that use of a dwelling in violation of the ordinance for a period of twenty-five years did not create a vested right to continue the use. The court indicated that "municipal inaction in enforcing an ordinance, without more, cannot support the granting of a variance". 83 Pa.Commonwealth Ct. at 444, 477 A.2d at 909.

Furthermore, in *Dewald v. Board of Adjustment, City of Pittsburgh,* 13 Pa.Commonwealth Ct. 303, 320 A.2d 922 (1974), this court considered the claim of a property owner that he was entitled to a variance by estoppel or that laches precluded the zoning authorities from enforcing an ordinance. Dewald had obtained permits allowing eight trailers on his property. Later, he increased the number to twenty-nine without obtaining the requisite permits. Significantly, the fact that the Allegheny County Health Department had issued health permits did not persuade the court that the zoning authorities had knowledge of the violation and had failed to act, or actively acquiesced; thus, the court deemed that the owner was not entitled to a variance by estoppel.

Similarly, in this case, the knowledge of health department officials as to Colelli's business operation may not be imputed to zoning officials for the purpose of enforcing the zoning code. Health officials have no jurisdiction over the administration of zoning code requirements, and are completely separate municipal agents from zoning authorities.

■ Furthermore, unlike the Pennsylvania Supreme Court's decision in *Heidorn Appeal,* 412 Pa. 570, 195 A.2d 349 (1964), upon which Colelli relies for support of his laches argument, the operation of the business has not been such an obvious physical violation, as was the awning and

porch in *Heidorn*, to put city zoning authorities on notice of the violation. In fact, other than Colelli's business vehicles, which he apparently parks in the rear of the house, there appears to be no visible indication that a business is conducted on the premises.

In Colelli's case, the one factor that weighs in his favor— the length of time his business has continued without municipal objection—must be balanced against the actions of the municipality, or lack of action. In this case, as indicated above, the city reasonably did not know of the unauthorized use. Thus, equity is on the side of the city, because we could not demand that it take action against conduct of which it has no knowledge.

Having concluded that the board correctly determined that Colelli has not established the municipality's acquiescence in the violation, we agree that the board properly determined that Colelli failed to meet the standard for laches or estoppel. The trial court's decision is reversed.

PELLEGRINI, J., did not participate in the decision in this case.

ORDER

Now, March 6, 1990, the decision of the Court of Common Pleas of Allegheny County, dated December 22, 1988, at No.: SA 294 of 1987, is reversed.