**Robert B. HALBERSTADT and Mary M. Halberstadt, Appellants,**

**v.**

**The BOROUGH OF NAZARETH, The Zoning Hearing Board of Borough of Nazareth and Raymond W. Orwig.**

Commonwealth Court of Pennsylvania.

Argued Sept. 23, 1994.

Decided Jan. 31, 1995.

Reargument Denied March 21, 1995.

Blake C. Marles, for appellants.

James L. Zulick, for appellee Raymond W. Orwig.

Before DOYLE and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Robert and Mary Halberstadt (Objectors) appeal from the January 31, 1994 order of the Court of Common Pleas of Northampton County (trial court) denying their appeal and affirming the Zoning Hearing Board's (Board's) decision granting Raymond W. Orwig (Owner) numerous variances for the proposed conversion of an existing structure into apartments and offices. We reverse.

The property at issue is located in a general commercial zoning district in Nazareth Borough and consists of two parcels. One is vacant with parking spaces (the south lot) and the other contains a nonconforming one-story brick and masonry structure.

On April 4, 1991, the Board denied Owner's application to use the property for twenty one-bedroom apartments, which would have necessitated a second story. On May 3, 1991, Owner submitted the application at issue to the Board to use the building for ten one-bedroom apartments on the second floor and four commercial spaces on the first floor. Owner also wanted to create additional parking spaces on the south lot.

After an April 29, 1991 hearing, the Board granted the requested variances subject to certain conditions. Objectors appealed that decision to the trial court and on April 24, 1992, the trial court remanded the case to the Board for further proceedings.

The Board held remand hearings on May 27 and June 2, 1992. Owner submitted floor plans, site plans and photos of the building as it existed at the time of purchase and as modified subsequent to receiving favorable approval from the Board. (Owner had proceeded with modifications at his own risk.) On June 15, 1992, the Board orally granted Owner's request for all necessary variances, subject to certain conditions. The Board issued a detailed written decision on July 14, 1992.

On appeal, the trial court determined that the fact that the use is listed as a special exception use does not disqualify Owner from seeking and electing to proceed upon the necessary variances as they relate to a multifamily structure. The court concluded that Owner needs a use variance from the special exception requirements.

The trial court also determined that the Board did not err in finding that Owner met the criteria for each variance. The necessary variances included: minimum lot area, maxi-

mum building coverage, maximum units per gross acre, yard requirements, parking, landscaping and loading space on the street. Additionally, a use variance was needed to add the second floor because a nonconforming structure may not be enlarged or extended unless such expansion is in conformance with the ordinance and does not increase the degree of non-conformity.

The trial court also dismissed Objectors' argument that the Board erred in approving parking as a primary use on a separate lot. In addition, the court determined that the law of merger did not apply because Owner was not seeking to divide two lots and the two lots had been in common ownership and historically used for parking purposes. Thus, the court upheld the Board's finding that the south lot (parking) and the main lot have merged and constitute the same zoning lot enabling the parking on the south lot to constitute an accessory use.

The trial court, unwilling to disturb the Board's credibility finding in favor of Owner that it was impossible to make feasible and reasonable use of the property for any permitted uses under the ordinance without variances, agreed that the property could not be developed in strict conformity with the zoning ordinance.

### Issues

The issue before us for review is whether the Board erred in granting Owner numerous variances.[1] Where the trial court does not take additional evidence, our scope of review in zoning cases is limited to determining whether the board committed an error or law or abused its discretion. *Purdy v. Zoning Hearing Board of Easttown Township,* 161 Pa.Commonwealth Ct. 386, 636 A.2d 1306 (1994).

1. Both sides concede that Owner withdrew his request to have his application considered as a special exception. On appeal, Owner does not dispute that numerous variances are necessary in order to complete this project. Because we determine here that the Board erred in granting Owner the requested variances, we need not reach the issues of whether the Board erred in failing to consider 1) whether Owner's proposal

### Discussion

The following criteria must be considered when a variance request is at issue:

1. The zoning ordinance imposes an unnecessary hardship due to unique conditions peculiar to the property;

2. Due to unique conditions, there is no possibility that the property could be developed in accordance with the ordinance;

3. Unnecessary hardship is not self inflicted;

4. The requested variance will not destroy the character of the neighborhood; and

5. The variance represents the least possible modification of the ordinance.

53 P.S. § 10910.2.

In addition, we note that variances are generally granted only under exceptional circumstances and that an applicant must satisfy all criteria necessary for the grant of a variance. *Gateside–Queensgate Co. v. Delaware Petroleum Co.,* 134 Pa.Commonwealth Ct. 603, 580 A.2d 443 (1990). The reasons for granting a variance must be substantial, serious and compelling. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). The burden upon a landowner who seeks a variance is a heavy one. *Polonsky v. Zoning Hearing Board of Mount Lebanon,* 139 Pa.Commonwealth Ct. 579, 590 A.2d 1388 (1991).

With regard to the use variance and the first variance criterion, the Board found as follows:

49. After review of the testimony of Raymond Orwig as well as the other witness and the counter-testimony of the protestor, Robert Halberstadt, and his expert witness, Michael Fackenthal, *the Board finds that the building itself together with the conditions on the lot, such as rock and*

satisfied the standards for special exception uses under the Borough's zoning ordinance; 2) whether Owner's proposal violated the ordinance by undertaking a conversion of an existing structure with a building addition that was not required by the building code; and 3) whether evidence was improperly admitted concerning the extent of work Owner performed on the premises.

*the slopes, represent unique physical circumstances justifying the grant of a variance in order to enable a reasonable use of the property.* The Board believes that any proposed use of the property, including those listed in the commercial district, would require variances.

. . . .

51. The Board rejects any notion that in order for a property to have a unique hardship justifying the grant of a variance, that it must be one-of-a-kind. Obviously such a conclusion would mean that if any one of four separate owners on a very steeply sloped hill requested a variance, they would not be entitled to relief because their neighbors suffer from the same problem in spite of the fact that in general the topography of the municipality is not steeply sloped. The question of uniqueness is obviously one as to whether or not the ordinance when applied to the particular lot with those particular conditions results in the regulations affecting the lot in a manner that is not common to the typical lot owner, so that it produces an undue hardship. Suffice it to say here that conditions of slope and rock may be in existence several places in the Borough, including the adjoining lots, but that does not preclude these physical conditions from being unique circumstances. In addition, none of the other parcels has a structure 'built like a fort' located on the premises.

(Board's Finding of Fact Nos. 49 and 51) (emphasis added). In short, the Board concluded that, in addition to the property's underlying rock strata and steepness, the nature of the building itself somehow made the property unique. We first address the alleged uniqueness of the land itself.

Objectors argue that the Board erroneously determined that unique physical circumstances were present merely because the property is on a steep slope and may have underlying rock formations. Specifically, Objectors contend that a variance was not warranted because the neighboring properties are also on a steep slope with underlying rock formations and therefore, the physical

characteristics of Owner's property are not unique to *his* property.

With regard to uniqueness, our Supreme Court has stated as follows:

> [B]efore a variance may be granted by the board *it must be shown that the circumstances that affect the land are unique and applicable to that land alone and are not conditions that affect the whole neighborhood.* Only a hardship peculiar to the applicant's property merits an allowance of a variance. If there is a general hardship the situation should be remedied by a revision of the general zoning regulation, not by the grant of a special privilege to single owners.

*English v. Zoning Board of Adjustment,* 395 Pa. 118, 120, 148 A.2d 912, 913–14 (1959) (emphasis added).

In *English,* the alleged uniqueness was the proximity of a residential property to commercial enterprises. Because English's neighbors shared the same circumstances, however, those conditions were not unique to his property. *See also Tirotta v. Zoning Hearing Board of Yeadon,* 110 Pa.Commonwealth Ct. 501, 532 A.2d 937 (1987) (zoning board denied owner variance to put satellite dish on the roof of his home because owner's lack of rear yard was shared by most of the lots in his neighborhood and, therefore, not unique).

Mr. Lester Stein, who testified on behalf of Owner, "acknowledged that the neighboring properties probably had similar rock conditions," thus conceding that the steep slope was not unique to Owner's property. (Board's Finding of Fact No. 29.) Therefore, we conclude that the nature of the land, in and of itself, does not merit the grant of a variance. We next consider the Board's finding that the building, in combination with the land, somehow makes the property sufficiently unique to warrant a variance.

■ Notwithstanding the Board's finding that "the building itself *together with* the conditions on the lot, such as rock and the slopes"[2] constitute the uniqueness of the property, Mr. Stein testified that "the build-

---

2. (Board's Finding of Fact No. 49) (emphasis   added).

ing could be used for a parking garage" and that "10 apartments could have been put on the street level." (Board's Findings of Fact Nos. 29 and 30.) Thus, at least to some extent, the fortress-like building could be used "as is" and would not have to be torn down in order for reasonable use to be made of the property.

In addition, Owner himself, found by the Board to be somewhat of an expert in developing properties in the area,[3] simply never presented specific evidence as to why the solidity of the building made a variance essential for reasonable use of the property. The mere fact that Owner may not be able to make the best economic use of his property, does not mean that he is entitled to a variance. *Lockwood v. Zoning Hearing Board of Millcreek Township,* 115 Pa.Commonwealth Ct. 368, 540 A.2d 336 (1988).

After reviewing the record, we conclude that the Board erred in finding that the land, alone or in combination with the building, constituted unique conditions sufficient to warrant a variance. As all criteria necessary for the granting of a variance must be satisfied, we need not discuss the remaining criteria as applied to the use variance.

Additionally, as the other variances requested relate to the use variance, we need not consider Objectors' argument that the Board erred in failing to apply the variance criteria to each of the other requested variances.

### Conclusion

For the above reasons, we hereby reverse the trial court's order.

### ORDER

AND NOW, this 31st day of January, 1995, the order of the Court of Common Pleas of Northampton County, dated January 31, 1994, is hereby reversed.

---

3. (Board's Finding of Fact No. 59.)