## Pizzo v. Zoning Hearing Board
## of Richland Township

*Stephen B. Harris,* for appellants.
*Richard Brown,* for Richland Township ZHB.
*William J. McCarthy,* for Richland Township.
*Frederick C. Horn,* for John M. Light, Intervenor.

RUFE, J., *J.,* June 19, 1995—This opinion is written pursuant to an appeal by Anthony and Patti Pizzo from the December 17, 1992 decision of the Richland Township Zoning Hearing Board denying their application for a variance from sections 404 and 405 of the Quakertown Area Zoning Ordinance.

The record from the zoning board hearing of December 10, 1992, reveals the following facts. The property in question is tax parcel 36-38-19 located at 1147 Rich Hill Road, Quakertown, Pennsylvania. The property consists of approximately 41 acres and is currently the site of one single-family residence and a 60' x 40' concrete block building. The property is accessed by a driveway approximately 700 feet in length. The area is zoned rural agricultural under the local ordinance.

Prior to purchase by the Pizzos, the property was owned by William C. Hamilton who acquired it in 1976. In August of 1976, Mr. Hamilton applied for and obtained a building permit allowing him to construct the 60' x 40' concrete block building on the premises. The building has two bays accessed by overhead doors which are 12 feet wide and 14 feet high. One side of the building has a grease pit that runs the full depth of the building. The other side of the building has an equipment lift. The ceiling is 16 feet high. The building also contains an overhead crane that is used to remove engines. (N.T. 12-10-92, pp. 11-12, 23-24.) Evidence indicates that Mr. Hamilton used the building for the repair and storage of tractor-trailers. The use designated on the building permit issued to Mr. Hamilton from Richland Township was for the maintenance and storage of farm implements and acces-

sory vehicles. (Exhibit A-33 Richland Township building permit.)

The Pizzos are the owners and operators of two businesses, Pizzo Tree Experts and Pizzo Land Clearing. When the Pizzos purchased the property in 1989, they intended to use the concrete block building for the maintenance and repair of the land-clearing equipment utilized in the businesses. There was also a need for some occasional storage of equipment. On January 12, 1990, the Pizzos were cited by Richland Township for operating a contracting business and truck terminal on the premises. On September 24, 1992, the Pizzos applied for a hearing in front of the zoning board on their application for a variance to allow for the occasional repair and storage of land-clearing equipment. The application was amended prior to the hearing to include the following issues: (1) a request for an interpretation that the use of the property for the maintenance and storage of equipment is a continuing nonconforming use; (2) an interpretation that the Pizzos had obtained a vested right in the use of the property for maintenance and storage of equipment; (3) an application for a variance to use the property for maintenance and storage of equipment based upon unique hardship; (4) an application for a variance by estoppel to use the property for maintenance and storage of equipment; and (5) a request for relief from the zoning ordinance's requirement that lane lots may only be used for single-family dwellings.

A hearing was held on December 10, 1992. The Pizzos presented the affidavit of the previous owner, Mr. Hamilton, which indicated that he used the building to service and maintain his personal cars, tractor, backhoe and

10 tractor-trailers and three dump trucks. Both Patti Pizzo and Anthony Pizzo testified that they were informed by Mr. Hamilton that the building had never been used to store farm equipment, only for the repair of tractor-trailers. Ms. Pizzo further stated that she was not seeking to use the building for any purpose other than the periodic repair of equipment.

Intervenor, John Light, also testified at the hearing. Mr. Light is an adjacent property owner to the Pizzos' property and opposed any grant of a variance. There were also several members of the neighborhood present at the hearing, some of whom testified as to disturbances created by the Pizzos' use of the property.

The matter was taken under advisement and on December 17, 1992, the board voted to deny the Pizzos' request for a variance. A written opinion was issued by the board on January 12, 1993. The board's crucial findings were that: (a) the Pizzos did not present any evidence which would indicate that the parcel in question could not be used for any permitted use within a rural agricultural zoning district; (b) that the township never acquiesced in the illegal use of the property; (c) that the board was unconvinced that any hardship existed; and (d) that the requested relief would be injurious to the public welfare. The instant appeal followed.

Initially, we note that in cases where no additional evidence is produced on appeal, our scope of review is limited to a determination of whether the board abused its discretion, committed an error of law or made findings of fact not supported by substantial evidence in the record. *Vanguard Cellular System Inc. v. Zoning*

*Hearing Board of Smithfield Township,* 130 Pa. Commw. 371, 568 A.2d 703 (1989). "Substantial evidence" has been described as such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Danwell Corporation v. Zoning Hearing Board of Plymouth Township,* 115 Pa. Commw. 174, 540 A.2d 588 (1988).

In the instant matter, appellants, the Pizzos, have addressed several different errors allegedly committed by the zoning board. We find merit in appellants' argument that the board committed an error of law by failing to determine that the Pizzos were entitled to a variance by estoppel.

In reviewing whether a party is entitled to a variance by estoppel, the relevant factors to consider include:

"(1) the municipality's failure to enforce the ordinance for a long period of time;

"(2) that the municipality knew, or should have known, of the illegal use and 'actively acquiesced' in the illegal use;

"(3) reliance by the owner on the appearance of regularity that the municipality's inaction has created;

"(4) hardship created by [the] cessation of the illegal use; and

"(5) that the variance will not be a threat to the health, safety or morals of the community." *Colelli v. Zoning Board of Adjustment of the City of Pittsburgh,* 131 Pa. Commw. 615, 618, 571 A.2d 533, 535 (1990).

In concluding that the Pizzos failed to satisfy these requirements, the board specifically found that the Pizzos did not present any evidence of the township's acquiescence in the illegal use of the property other

than the building permit, which indicated that the building was to be used for the maintenance and storage of farm equipment and accessories. (Decision of the Zoning Hearing Board of Richland Township, 1-12-93, p. 8.) Having reviewed the record established in this case, we find such a determination to be in complete disregard of the evidence produced by appellants at the hearing.

Appellants presented the sworn affidavit of William C. Hamilton in support of their application for a variance. (Exhibit A-35.)[1] In the affidavit, Mr. Hamilton indicates that in August of 1976 he consulted with a zoning officer from Richland Township concerning his intent to build a concrete block building on the property where he could service heavy equipment and tractor-trailers. He further states that the zoning officer inspected the property and placed a limitation that only three tractor-trailers could be located on the premises at one time. (Exhibit A-33 permit application of William C. Hamilton.) Upon receiving the needed permits, Mr. Hamilton constructed the building and serviced the tractor-trailers and equipment in the building from 1976 until 1989, when he sold the property to the Pizzos. In paragraph 16 of the affidavit, Mr. Hamilton states:

"It is my belief and opinion that Mr. Rothrock (the zoning officer) understood perfectly that my intended use of the property, and for which he approved the zoning application, was to service and maintain equip-

---

1. Counsel for the Pizzos stated on the record that the Pizzos received approval from the solicitor, prior to the hearing, to use the affidavit format for Mr. Hamilton's testimony. Mr. Hamilton was unavailable to testify at the hearing. (N.T. 12-10-92, p. 163.)

ment and vehicles, personal and business as described above." (Exhibit A-35, affidavit of William C. Hamilton.)

Mr. Hamilton also believed that he had all the proper permits for his desired use of the building.

Contrary to the board's conclusions, these facts indicate that the township was informed of the intended illegal use of the building but chose to issue the permits and ignore the illegal use for 13 years. Not only were the statements contained in the affidavit uncontradicted, they were actually supported by the testimony of the intervenor, Mr. Light, and of some of the neighbors in the community. Mr. Light stated that he observed tractor-trailers parked at the concrete block building and learned that Mr. Hamilton was performing maintenance work on tractor-trailers for his refrigerated trucking business. (N.T. 12-10-92, pp. 180-81, 192-94.) Mr. Light also testified that he never saw the building being used by Mr. Hamilton for any agricultural or farming purposes. (N.T. 12-10-92, pp. 196-97.) Ms. Janice Filk, a member of the neighborhood, stated that she observed Mr. Hamilton performing work on tractor-trailers and that two or three trucks a day went in and out of the property. (N.T. 12-10-92, pp. 222-23.)

The board's failure to address the statements contained in the Hamilton affidavit constitutes a manifest abuse of discretion. The permit application, the building permit, the affidavit and the testimony of the witnesses at the hearing all provide sufficient grounds to satisfy the first prong of the test for a variance by estoppel. Having been made aware of the intended use as far back as August 1976, prior to the construction of the

building, the township cannot now claim that it was unaware of the actual use. Moreover, the fact that Mr. Hamilton's tractor-trailers traveled up and down Rich Hill Road for 13 years supports the obvious nature to the violation. We find that the township did more than simply delay in the enforcement of the zoning ordinance; it actively acquiesced in the illegal use of the concrete block building for over 13 years. Although we may be bound by the board's findings which are the result of resolutions of credibility and conflicting testimony, we are not bound by findings based upon "a capricious disregard of evidence." *Vanguard, supra* at 380, 568 A.2d at 707.

The case of *Township of Haverford v. Spica,* 16 Pa. Commw. 326, 328 A.2d 878 (1974) lends persuasive support for our conclusion. There the court held that the landowners had a vested right to continue a commercial use in an area zoned for residential use only. The court based its decision on the facts that the township had granted a building permit in 1938 allowing the landowner to construct a real estate office on the property, despite the fact that it was a commercial use; that the township had actively acquiesced for 36 years and that the violation was of an obvious nature.

Thus, we find that the board's determination was not supported by substantial evidence in the record and that the capricious disregard of the Pizzos' evidence constituted an abuse of the board's discretion.

The third requirement for a variance by estoppel, reliance by the owner on the appearance of regularity, was never addressed by the zoning board in its decision. Our review of the record reveals ample evidence of

reliance by the Pizzos on the appearance of regularity created by the township's inaction. Several times in her testimony, Patti Pizzo states that she met with Mr. Hamilton in the concrete block building when they were discussing the purchase of the property. Ms. Pizzo actually saw Mr. Hamilton repairing his tractor-trailers in the building. (N.T. 12-10-92, pp. 38, 87-88.) Ms. Pizzo also stated that she intended to use the building in basically the same capacity as Mr. Hamilton. (N.T. 12-10-92, p. 39.) The Pizzos were repeatedly told by Mr. Hamilton that he had the permits necessary for maintenance of heavy equipment on the property. Since he had been using the property in the same capacity for 13 years, the Pizzos reasonably relied on those representations. (N.T. 12-10-92, pp. 44, 72, 86-87, 126-27.) Ms. Pizzo checked the township's file on the property and found that no citations were ever issued to Mr. Hamilton for violations of the zoning restrictions. (N.T. 12-10-92, pp. 50-51.) The Pizzos also noted that the brochure on the property provided by the realtor stated that the garage had two bays long enough to service buses or heavy trucks. (Exhibit A-36.) (N.T. 12-10-92, pp. 36-37.) Both Patti Pizzo and Michael Pizzo testified that although they knew the area was zoned rural agricultural, they believed that using the garage for repairs was a permitted use because they saw Mr. Hamilton using the building in that capacity, and were told by Mr. Hamilton that he had been using the garage for that purpose for the last 13 years. (N.T. 12-10-92, pp. 38-39, 44, 72-73, 86, 126-27.) Mr. Hamilton's innocent reliance was also caused by the township's inaction, as he specifically contacted the zoning officer before constructing and using the building, and was led to

believe that such activity was legally permitted. (Exhibit A-35, affidavit of William C. Hamilton.) These facts all support a determination that the Pizzos innocently relied upon the appearance of regularity created by the township's inaction, and were lulled into believing that the concrete block building was allowed to be used for the repair and storage of heavy equipment and trucks.

Moreover, appellants' innocent reliance is evidenced by their substantial expenditures in connection with the property. The Pizzos bought the property because they would be able to do repairs on their land-clearing equipment in the garage. They spent considerable amounts in preparing and modifying the driveway area with additional stone so the broken equipment could be transported to the garage. (N.T. 12-10-92, pp. 88-89.) The Pizzos also regraded a portion of the area around the garage to minimize water accumulation. (N.T. 12-10-92, pp. 88, 110-11, 115-16.) Thus, we find that the Pizzos' improvements to the building and grounds indicate that they purchased the property in the good faith belief that their desired use of the property was lawful.

The board's determination that no hardship would result from the cessation of the illegal use is, likewise, unsupported by the evidence. The Pizzos will have nowhere to repair the land-clearing equipment if they are not permitted to use the garage. They will have a building located on their property which cannot be used for any purpose defined in the rural agricultural district regulations. (N.T. 12-10-92, pp. 26-27.) The evidence indicates that the surrounding property is unfit for farming, so the building cannot be used for the storage and repair of farm equipment. (N.T. 12-10-92, pp. 60-

61.) Mr. Hamilton's affidavit indicates that the building was designed and constructed for the purpose of repairing and storing large trucks and equipment. The board's conclusive statements that no evidence was presented as to why the property could not be used in conformity with the rural agricultural regulations is a clear abuse of discretion. (Decision of the Zoning Hearing Board of Richland Township, p. 8.) Both Patti Pizzo and Anthony Pizzo testified that the majority of the property was covered in brush and trees. (N.T. 12-10-92, pp. 15-16, 61-64, 81-82, 84.) Ms. Smith, a tenant on the property, stated that any type of garden must grow through rocks and weeds. (N.T. 12-10-92, p. 156.) Additionally, Ms. Filk, a neighboring property owner, testified that the land was not suitable for agricultural purposes. She stated, "It is very, very swampy, it's clay soil, when it's wet it's schloopy, you can get stuck in it. When it is dry it is like bricks, so it is very difficult to try to farm it. Our kids try to raise a garden, but they don't get much." (N.T. 12-10-92, p. 223.)

The board's finding of fact no. 17 is erroneous. There is nothing in the record which indicates that the premises was used in any kind of agricultural capacity after 1976, when Mr. Hamilton bought the property. The board offered no basis for its findings and in light of substantial amount of testimony to the contrary, we find that a hardship will result if the Pizzos are prevented from using the building to repair their equipment.

Lastly, the board concluded that the requested relief would be injurious to the public welfare. (Decision of the Zoning Hearing Board of Richland Township, p. 9.) As with much of the decision, the board offers this conclusion without factual support. The board cites

the noise and traffic created by the movement of heavy land-clearing equipment as seriously affecting the public welfare. However, based upon the following dialogue, there are more trucks traveling on the road from the local sawmill than from any operation connected with the Pizzos. Mr. Rudolph, a member of the community, asked:

"The truck that you bring on the property and that you would run in on the road, are they as large—are they as large as the log hauling trucks from the sawmill that is almost adjacent to your property?

"THE WITNESS: Yes.

"MR. RUDOLPH: Are they as often as the sawmill trucks?

"THE WITNESS: No.

"MR. RUDOLPH: Do they run at all times of the day similar to the sawmill trucks?

"THE WITNESS: No, not as often, only to bring something in to the facility.

"MR. RUDOLPH: When you said earlier that the properties all around were residential, the sawmill is adjacent to your property?

"THE WITNESS: No, it's down the end of Rich Hill Road on 309.

"MR. RUDOLPH: But it's within a stone's throw or whatever?

"THE WITNESS: Half a mile." (N.T. 12-10-92, pp. 103-104.)

Ms. Pizzo also testified that the equipment was only brought to the property when it was broken down and could not be repaired at the work site. (N.T. 12-10-92,

pp. 31-32.) She further testified that the truck may bring a piece of equipment to the building to be repaired approximately once a week between the hours of 7 a.m. to 4 p.m. (N.T. 12-10-92, pp. 105, 108.)

Based upon our review of the record, we find that the board abused its discretion by determining that there was a danger to the public welfare, when no evidence of any type of injurious conduct, other than what was already occurring in the area from other sources, was presented at the hearing. Given that Mr. Hamilton drove at least three tractor-trailers in and out of the facility on a regular basis for 13 years and no one in the area complained, we do not believe that the occasional unpleasantness derived from a truck on Rich Hill Road given the already existing truck traffic is substantial enough or reasonable enough for the board to characterize it as a detriment to the public welfare.

In light of the board's capricious disregard of the evidence offered by the Pizzos at the zoning board hearing of December 10, 1992 in making its findings of fact, and the error of law resulting from the board's rejection of the Pizzos' request for a variance by estoppel, we render the following:

## ORDER

And now, June 19, 1995, upon consideration of the appeal of Anthony and Patti Pizzo from the decision of the Zoning Hearing Board of Richland Township dated December 17, 1992, denying their request for a variance from the requirements of the Quakertown Area Zoning Ordinance, it is hereby ordered and decreed that the appeal is granted and the decision of the zoning

hearing board is overruled. Appellants Anthony and Patti Pizzo are entitled to a variance by estoppel allowing for the use of the concrete block building situated on the property located at 1147 Rich Hill Road, Quakertown, Pennsylvania, for the occasional maintenance and storage of land-clearing equipment.