**Jeffrey S. RHOADS, Appellant,**

v.

**ZONING HEARING BOARD, Borough of Sewickley and Antioch Baptist Church.**

Commonwealth Court of Pennsylvania.

Argued May 14, 1996.

Decided Sept. 12, 1996.

Reargument Denied Nov. 19, 1996.

Jeffrey T. Jochims, for Appellant.

Roberta G. Willenkin, for Appellee, Antioch Baptist Church.

Before DOYLE and SMITH, JJ., and RODGERS, Senior Judge.

SMITH, Judge.

Jeffrey S. Rhoads appeals from an order of the Court of Common Pleas of Allegheny County that affirmed a decision of the Zoning Hearing Board (Board) of the Borough of Sewickley (Borough) granting variances to the Antioch Baptist Church (Antioch). Rhoads contends that Antioch did not meet any of the five points that comprise the stan-

dard for the grant of a variance; that the Board abused its discretion by imposing its view of what the zoning ordinance should be rather than what it is; and that the Board erred and abused its discretion by granting multiple variances when Antioch only requested one.

■ The Board found that Antioch's property is at the corner of Elizabeth Street and Little Alley in an R–3 Residential district, where places of worship are permitted as a conditional use. The lot is nearly rectangular and narrow, running 41 feet on the street at the north and 122 feet along the alley to the east. Antioch's church building, a brick structure built in 1919, occupies roughly half the length of the lot. Rhoads lives in the house on the adjacent property on the west. The separation between the church and that property line, at the southwest corner, is approximately 5.58 feet; at the northwest corner it is 9.34 feet. The structure has no required front yard, and it is also nonconforming as to side yards, which should total 16 feet under the Borough's zoning ordinance (Ordinance). The area behind the church is a paved parking lot. The church sanctuary is well above grade, with the main entrance being a set of steep steps from Little Alley at the northeast corner. Of Antioch's present membership of 75 parishioners, 5 have a current need for some special means of access and others likely will have in the near future.

Antioch sought a variance from Section 73(2) of the Ordinance to construct a ramp to provide access for handicapped persons. The proposed ramp would run across the south side of the building, turn the corner and run the length of the west side of the building (next to Rhoads' property), ending at a platform five feet, eight inches high. From there a door would lead into a small enclosed area that Antioch added in 1984 for a coatroom pursuant to a grant of a variance, filling in a space at the northwest corner of the building. The ramp would be unenclosed and five feet wide with handrails 34 inches

high on both sides. Section 73 of the Ordinance enumerates obstructions permitted in yards; subsection (2) permits an unenclosed, one-story porch on piers, not closer than four feet to a property line, but not a two-story or enclosed porch or one with a solid foundation and capable of being enclosed.

Based on the testimony of contractors retained by Antioch, the Board found that alternative methods of providing handicapped access, such as an elevator or stair glide, were impractical due to the size and height of the existing roof, the proximity of the north side of the church to the sidewalk on Elizabeth Street, the proximity of the front door steps to Little Alley and other characteristics. It noted that Rhoads and others voiced concern that the ramp would result in a loss of privacy and exposure to a flow of traffic into and out of the church from which they are now shielded.

The Board concluded that, although the intent of the Ordinance is not to encourage the existence of nonconformities, it permits enlargement and expansion under certain circumstances so as not to deprive the owner of reasonable use of the property. Comparing the ramp to the permitted unenclosed porches and steps necessary for access with no restriction (Section 73(4)), and noting the trend in state and federal law toward providing for reasonable handicapped access to various facilities, the Board concluded that the proposed ramp was similar to the permitted structures and was within the intent of the drafters. On appeal, the trial court affirmed, without taking evidence.[1]

To show entitlement to a zoning variance, an applicant must establish that: (1) an unnecessary hardship will result if the variance is denied, due to unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hard-

---

1. Where the trial court receives no additional evidence, the scope of this Court's review is limited to determining whether the zoning hearing board committed error of law or abused its discretion. *Worthington v. Zoning Hearing Board of New Britain Township,* 669 A.2d 497 (Pa. Cmwlth.1996).

ship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Township of Birmingham v. Chadds Ford Tavern*, 132 Pa.Cmwlth. 312, 319–20, 572 A.2d 855, 858 (1990).[2]

Rhoads first contends that Antioch has not demonstrated circumstances that are unique and that affect its property alone, as opposed to the whole neighborhood, citing *Halberstadt v. Borough of Nazareth*, 654 A.2d 249 (Pa.Cmwlth.), *appeal granted*, 542 Pa. 678, 668 A.2d 1139 (1995). However, the Board made detailed findings as to the narrowness of the lot and the size and location of the church building on it and concluded that Antioch "cannot reasonably provide handicap access because of the nonconformities of the property." Board's Opinion, Conclusion of Law No. 14. Rhoads points to the recent decision in *Larsen v. Zoning Board of Adjustment of the City of Pittsburgh*, 543 Pa. 415, 672 A.2d 286 (1996), where the Supreme Court noted that the steep drop-off of the backyard was common to most properties along the same side of the street.

■ In the present case, although many properties on Elizabeth Street are long and narrow, only Antioch's has upon it a relatively large church building constructed decades before the Ordinance was adopted. Citing *Halberstadt*, Rhoads appears to argue that size and location of the existing building are not circumstances properly considered in determining hardship. However, in *Halberstadt* this Court expressly did consider the nature of the structure as part of the unnecessary hardship analysis. The Court did not state or imply that only geographic factors might properly be considered.

Rhoads also contends that any hardship that may exist here is "personal" and not sufficient to support the grant of a variance, relying upon *Kline Zoning Case*, 395 Pa. 122, 148 A.2d 915 (1959), and its progeny. In *Kline* the Supreme Court rejected an applicant's assertion that respiratory problems of family members entitled him to a variance from a setback requirement so he could enclose a porch to provide additional interior living space. This Court does not view these cases as being applicable here. As the trial court noted, the purpose of Antioch's application is to provide for the necessity of access to an existing church for members who are handicapped. Providing access for such persons is essential to the functioning of the church. It is not a matter of comfort or convenience for a particular individual or family, as in *Kline*, which has no relation to the ability of the property to be used reasonably by others for its permitted purpose.[3]

This point is closely related to Rhoads' argument concerning the criterion that the property cannot be developed in strict conformity and a variance is necessary to enable reasonable use of it. Rhoads asserts that the church building has been in existence and has been used reasonably for 75 years. However, this is not a case where an owner seeks to develop land, in the sense of building on vacant property, expanding floorspace or converting an existing structure to another use.

2. *See* Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10910.2, added by Section 89 of the Act of December 21, 1988, P.L. 1329.

3. In a reply brief, Rhoads cites this Court's recent decision in *Aquaro v. Zoning Board of Adjustment of the City of Philadelphia*, 673 A.2d 1055 (Pa.Cmwlth.1996), for support. There the Court rejected a doctor's contention that he was obligated by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101—12213, to enlarge his offices to provide a "quiet room" for disruptive children and handicapped access through the garage. The Court held that a variance is not per se warranted where an owner desires to comply with the ADA; further, there was no finding that the doctor could not provide handicapped access without violating the zoning ordinance. Under *Heisterkamp v. Zoning Hearing Board of the City of Lancaster*, 34 Pa.Cmwlth. 539, 383 A.2d 1311 (1978), where the Court denied a variance request when a doctor's practice had simply outgrown his office space, the Court concluded that such economic hardship did not equate with unnecessary hardship. Antioch's petition is not based upon a claim of compulsion under the ADA or of need to expand due to increase in membership.

There is no dispute in this case that the use of the property as a church is appropriate. As stated in *Larsen,* 543 Pa. at 426, 672 A.2d at 291: "Even if [the applicants] had established the existence of an unnecessary hardship, they would be entitled to a variance only if they could establish that the variance was necessary for the reasonable use of the land." In this Court's view, Antioch's evidence adequately established that some form of handicapped access (which could not be installed without a variance) was necessary for the reasonable use of the property.

Rhoads next asserts that any hardship was self-inflicted, because the coatroom built in 1984 at the northwest corner of the property along the sidewalk occupies space where the record shows that varieties of porch lifts could be comfortably located. This assertion links Rhoads' contentions regarding self-inflicted hardship to his contention that the proposed ramp is not the minimum variance that will afford relief. As to that issue, however, Rhoads simply misrepresents the evidence, asserting that Antioch chose the ramp because that was the "most feasible" solution to the access problem and that Antioch failed to consider alternatives to a ramp because they represented "an excessive amount of work and money." The testimony cited at N.T. October 4, 1994, pp. 63–64, is that of Antioch's Pastor, Reverend Norman Hunt, when he explained why the west side was chosen as the site for the ramp, not why a ramp was chosen as the means of access among other possible alternatives.

■ At the hearing Antioch's contractor witnesses testified about the problems associated with installing or operating an interior elevator, an outside chair lift from the sidewalk on the north side or a chair lift on the front steps. Further, the Board questioned the contractors specifically as to the consideration that was given to alternatives to the ramp. On this heavily factual determination concerning the choice of one method of solving the access problem over others, the Board accepted Antioch's evidence over that offered by Rhoads. If the evidence before the Board was such that a reasonable mind might accept it as adequate to support the findings made, then those findings will not be disturbed on appeal. *Board of Supervisors of Upper Southampton Township v. Zoning Hearing Board of Upper Southampton Township,* 124 Pa.Cmwlth. 103, 555 A.2d 256 (1989).

On the issue of altering the essential character of the neighborhood or substantially impairing the use or development of adjacent properties or creating a detriment to the public welfare, Rhoads again misrepresents the record by asserting that the only witnesses to speak to the issue of the character of the neighborhood testified that it would be adversely affected. In fact, Antioch presented a witness, Blaine Frank, who offered photographs of other properties in the immediate area with various dimensional nonconformities, for the purpose of showing that the proposed access ramp would not be out of character.

Although Rhoads and other neighbors testified as to their opinions as to negative impact, and Rhoads offered a petition with 10 signatures opposing the ramp, Antioch also offered a petition with approximately 28 signatures of persons living near the church who did not oppose the grant of a variance for the ramp. N.T. October 4, 1994, Antioch's Ex. 2. The Board recognized that the ramp would have some effect on Rhoads' property and on the neighborhood, but the Board designed conditions to minimize adverse effects, including narrowing the ramp to four feet and requiring a brick veneer. The Court sees no abuse of discretion in the Board's determination that Antioch had met its burden on this point.[4]

Finally, Rhoads asserts that the Board erred and abused its discretion by granting variances as to multiple sections of the Ordi-

---

**4.** Rhoads asserts that there is no statutory or common law requirement that Antioch provide an alternative means of access and that the Board improperly applied what it wished the Ordinance provided rather than what it does provide. The Board referred to federal and state statutes requiring installation of alternative means of access in some circumstances but expressly concluded that they did not apply here. Such references were not essential to its decision, which was based upon standard variance principles.

nance when the application requested a variance only as to Section 73(2). By "multiple" Rhoads means that the Board also granted a variance to Section 85 of the Ordinance, which prohibits the alteration of a nonconforming structure in any way. There was never any question in this case that Antioch's request was to alter a nonconforming structure, thereby necessarily involving Section 85. Section 97 of the Ordinance provides that a variance from the terms of the Ordinance shall not be granted unless and until a written application is submitted demonstrating that the requirements are met. Here there was a written application followed by the necessary demonstration. Section 97 requires no more. Based upon the foregoing discussion, the order of the trial court is affirmed.

### ORDER

AND NOW, this 12th day of September, 1996, the order of the Court of Common Pleas of Allegheny County is affirmed.

DOYLE, J., dissents.